**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **PAUL I. VANCE,** ) | | |
| Plaintiff ) | | |
| ) | | |
| v. ) | Civil Action No. 1:05cv00023 | |
| ) | **MEMORANDUM OPINION** | |
| **JO ANNE B. BARNHART**, ) | | |
| **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT | |
| Defendant ) | United States Magistrate Judge | |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand the case to the Commissioner for further consideration in accordance with this memorandum opinion.

*I. Background and Standard of Review*

Plaintiff, Paul I. Vance, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Vance protectively filed his application for DIB on or about April 1, 2002, alleging disability as of March 8, 2002, based on bad lungs, hypertension, diabetes, arthritis, back problems, hearing loss and a heart condition. (Record, ("R."), at 53-55, 63, 68.) The claim was denied initially and upon reconsideration. (R. at 31-33, 37, 38-40.) Vance then requested a hearing before an administrative law judge, ("ALJ"). (R. at 41.) The ALJ held a hearing on May 22, 2003, at which Vance was represented by counsel. (R. at 267-93.)

By decision dated March 26, 2004, the ALJ denied Vance's claim. (R. at 21-27.) The ALJ found that Vance met the disability insured status requirements of the Act through the date of his decision. (R. at 26.) The ALJ found that Vance had not engaged in substantial gainful activity since March 8, 2002. (R. at 26.) The ALJ also found that the medical evidence established that Vance suffered from severe impairments, namely back problems and heart disease, but he found that Vance did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25-26.) The ALJ found that Vance's allegations were not totally credible. (R. at 26.) The ALJ found that Vance retained the residual functional capacity to perform the full range of medium

work.[1] (R. at 26.)  The ALJ found that Vance could perform his past relevant work as a mine electrician. (R. at 26.)  Thus, the ALJ found that Vance was not disabled under the Act and was not eligible for DIB benefits. (R. at 26-27.)  *See* 20 C.F.R. § 404.1520(f) (2005).

After the ALJ issued his decision, Vance pursued his administrative appeals, (R. at 16), but the Appeals Council denied his request for review. (R. at 6-13.)  Vance then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision.  *See* 20 C.F.R. § 404.981 (2005).  The case is before this court on Vance's motion for summary judgment filed August 22, 2005, and the Commissioner's motion for summary judgment filed October 27, 2005.

## *II. Facts*

Vance was born in 1949, (R. at 53), which classifies him as a person of advanced age under 20 C.F.R. § 404.1563(e). Vance has a high school education and past work experience as a coal miner and electrician. (R. at 74, 94, 273-74.)

James Williams, a vocational expert, testified at Vance's hearing. (R. at 286-90.)  Williams stated that Vance's work as a mine electrician was considered to be a medium, skilled job. (R. at 286.) He stated that this work had skills that transferred to light work.[2] (R. at 288.) Williams was asked to consider a hypothetical individual of

---

[1] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2005).

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, he also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2005).

-3-

Vance's age, education and skill level, who could perform work as indicated in the assessment completed by Dr. Frank M. Johnson, M.D., a state agency physician. (R. at 184-91, 289.) He indicated that Vance had transferable skills to perform work at the medium and light levels that included jobs as a vehicle equipment cleaner, an inspector, a material handler, a watch guard, a parking lot attendant and a cashier. (R. at 289-90.)

In rendering his decision, the ALJ reviewed records from the Tazewell County School Board; Clinch Valley Medical Center; Dr. Clair S. Hixson, M.D.; Dr. German Iosif, M.D.; Dr. Michael J. Hartman, M.D., a state agency physician; The Clinic; Dr. J. P. Sutherland Jr., P.C.; Dr. Frank M. Johnson, M.D., a state agency physician; Fred A. Sayers Jr., D.C., a chiropractor; Dr. Nasreen R. Dar, M.D., a psychiatrist; and Dr. Jeffrey A. Larsen, M.D.

Records from the Tazewell County School Board show that at age 11, Vance had a verbal IQ score of 85, a performance IQ score of 89 and a full-scale IQ score of 87. (R. at 99.)

The record indicates that Vance sought follow-up treatment at The Clinic from April 2001 through March 2003 for coronary artery disease, hypertension, diabetes and gastroesphageal reflux disease. (R. at 150-60, 211.) Vance repeatedly reported that he was doing well. (R. at 150-57.) In February 2002, Vance complained of general fatigue and malaise, heaviness in his chest, shortness of breath and dizziness. (R. at 151.) He was diagnosed with coronary artery disease, diabetes mellitus, high cholesterol and hypertension. (R. at 151.) In May 2002, he reported that he was doing fine. (R. at 150.) In November 2002, an x-ray of Vance's lumbar spine showed

-4-

minimal narrowing in the L5-S1 disc space with mild exaggerated lordosis in the lumbar spine. (R. at 160.)

In June 2001, Vance was admitted to Clinch Valley Medical Center for complaints of chest pain and shortness of breath. (R. at 102-09.) Chest x-rays showed no significant cardiopulmonary abnormalities. (R. at 110.) He was discharged with a diagnosis of atypical chest pain. (R. at 103.) Vance was admitted in May 2002 for complaints of fever and body aches. (R. at 123-24.) He was discharged with a diagnosis of urinary tract infection, coronary artery disease, status post myocardial infarction, history of hypertension, increased cholesterol and a hiatal hernia. (R. at 124.) In February 2003, an MRI of Vance's lumbar spine showed degenerative disc disease at the L5-S1 level with mild disc dehydration at the L3-L4 and L4-L5 levels. (R. at 202.) No evidence of focal disc protrusion or central spinal stenosis was seen. (R. at 202.) An MRI of Vance's cervical spine showed no evidence of cervical disc herniation or central spinal stenosis. (R. at 203.) It did show moderate left foraminal stenosis at the C3-L4 level. (R. at 203.)

The record shows that Dr. J. P. Sutherland Jr., saw Vance on August 1, 2001, for complaints of stomach and left shoulder pain. (R. at 175.) Vance had decreased range of motion in his left shoulder. (R. at 175.) On March 4, 2002, Vance complained of stomach pain. (R. at 173.) He had severe restriction of range of motion of the lumbar spine in lifting, bending, stooping and squatting. (R. at 173.) On March 25, 2002, Dr. Sutherland reported that Vance had complex problems that would prevent him from performing gainful employment. (R. at 172.) He advised Vance that he should seek total and permanent disability. (R. at 172, 180.) In April 2002, Dr. Sutherland diagnosed reflux esophagitis. (R. at 171.) In September 2002, Vance was

diagnosed with irritable bowel syndrome, reflux esophagitis, diabetes mellitus, type II, coronary artery disease, hypertension and post myocardial infarction syndrome. (R. at 170.) In November 2002, Vance complained of back pain and chronic fatigue syndrome. (R. at 169.) He also complained of severe mood swings, irritability and insomnia. (R. at 169.) He had decreased range of motion in the lumbar spine in lifting, bending, stooping and squatting. (R. at 169.) Vance had paravertebral muscle spasms in the L2-L5 levels. (R. at 169.) Dr. Sutherland diagnosed post myocardial infarction syndrome, coronary artery disease with angina pectoris, bilateral sciatica, chronic pain syndrome, chronic bronchitis, emphysema and chronic fatigue syndrome. (R. at 169.)

On November 27, 2002, Dr. Sutherland completed an assessment indicating that Vance could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing up to five pounds. (R. at 181-83.) He reported that Vance could stand and/or walk a total of two hours in an eight-hour workday and that he could do so for 15 minutes without interruption. (R. at 181.) Dr. Sutherland reported that Vance could sit a total of three hours in an eight-hour workday and that he could do so for 30 minutes without interruption. (R. at 182.) He reported that Vance should never climb, stoop, kneel, crouch or crawl and only occasionally balance. (R. at 182.) He indicated that Vance's abilities to reach, to handle, to push and to pull were limited. (R. at 182.) Dr. Sutherland reported that Vance was restricted from working around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration. (R. at 183.)

The record indicates that Vance saw Fred A. Sayers Jr., D.C., a chiropractor, from March 2002 through December 2002 for complaints of neck, shoulder, back and arm pain. (R. at 192-97.) In March 2002, Vance reported that, after receiving two

adjustments, his neck and shoulder pain had improved. (R. at 192, 195.) In September 2002, Vance complained of hip pain after lifting a lawnmower into the back of his truck. (R. at 192.) In November 2002, Vance complained of back pain. (R. at 192.) X-rays showed osteophytes at the L4-L5 and L5-S1 levels and degenerative disc disease. (R. at 192, 194.) Conservative treatment was recommended, and Sayers advised Vance not to bend, lift, squat, sit or stand for prolonged periods. (R. at 193-94.)

In April 2002, Dr. Clair S. Hixson, M.D., saw Vance for follow-up of coronary artery disease and hypertension. (R. at 118-19.) Vance complained of being tired and experiencing dyspnea on exertion. (R. at 118.) Dr. Hixson reported that Vance's affect was flat. (R. at 118.) She reported that he appeared generally well. (R. at 118.) Examination of Vance's chest was normal. (R. at 118.) Dr. Hixson diagnosed fatigue and lack of energy, coronary artery disease, hypertension, not well-controlled, hyperlipidemia, treated, diabetes mellitus, type II, and status post right inguinal herniorrhaphy. (R. at 119.) In March 2003, Dr. Hixson reported that Vance appeared to be in excellent health. (R. at 236.) Examination was normal. (R. at 236.) Dr. Hixson diagnosed coronary artery disease, hypertension, not adequately controlled, hyperlipidemia, treated, diabetes mellitus, status post right inguinal herniorrhaphy and possible cholecystitis. (R. at 236-37.)

In October 2002, Dr. German Iosif, M.D., examined Vance at the request of Disability Determination Services. (R. at 125-28.) Vance complained of chronic pain in the lumbosacral spinal area. (R. at 125.) Examination of Vance's cervical and thoracolumbar spine showed no deformity, tenderness or range of motion limitation. (R. at 127.) X-rays of Vance's lumbar spine were normal. (R. at 127, 139.) Spirometries showed excellent flows and volumes. (R. at 127, 131-37.) Chest x-rays

were normal. (R. at 127, 138.) Dr. Iosif diagnosed complaints of exertional dyspnea, most likely due to deconditioning and maybe anxiety syndrome, chronic low back pain and coronary artery disease. (R. at 127-28.) Dr. Iosif reported that there was no obvious indication of permanent or ongoing functional impairments. (R. at 128.)

On November 13, 2002, Dr. Michael J. Hartman, M.D., a state agency physician, indicated that Vance had the residual functional capacity to perform medium work. (R. at 140-47.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 142-44.)

On February 3, 2003, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Vance had the residual functional capacity to perform medium work. (R. at 184-91.) He indicated that Vance's ability to push and pull was limited in the lower extremities. (R. at 185.) Dr. Johnson reported that Vance could frequently climb and balance and occasionally stoop, kneel, crouch and crawl. (R. at 187.) He also indicated that Vance's ability to reach was limited. (R. at 187.) He found no visual, communicative or environmental limitations. (R. at 188-89.)

On February 18, 2003, Dr. Nasreen R. Dar, M.D., a psychiatrist, evaluated Vance at the request of Vance's attorney. (R. at 205-07.) Dr. Dar reported that Vance's affect and mood were depressed. (R. at 206.) Dr. Dar reported that Vance's ability to concentrate was impaired and that his recent and remote memory was intact. (R. at 206.) Dr. Dar diagnosed moderately severe neurotic depression and moderately severe chronic generalized anxiety disorder. (R. at 206.) Dr. Dar reported that Vance did not appear able to tolerate stress and that he was not a good candidate for vocational rehabilitation. (R. at 207.)

Dr. Dar completed a mental assessment indicating that Vance was seriously limited, but not precluded, in his ability to follow work rules, to use judgment, to function independently, to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 208-09.) Dr. Dar indicated that Vance had no useful ability to relate to co-workers, to deal with the public, to interact with supervisors, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex and detailed instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 208-09.)

### *III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003 & Supp. 2005); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated March 26, 2004, the ALJ denied Vance's claim. (R. at 21-27.) The ALJ found that the medical evidence established that Vance suffered from severe impairments, namely back problems and heart disease, but he found that Vance did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25-26.) The ALJ found that Vance retained the residual functional capacity to perform the full range of medium work. (R. at 26.) The ALJ found that Vance could perform his past relevant work as a mine electrician. (R. at 26.) Thus, the ALJ found that Vance was not disabled under the Act and was not eligible for DIB benefits. (R. at 26-27.) *See* 20 C.F.R. § 404.1520(f) (2005).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Vance argues that the ALJ's decision is not based on substantial evidence of record. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-9.) Vance argues that the ALJ erred by ignoring the records and opinions of his treating physician, Dr. Sutherland. (Plaintiff's Brief at 9-12.) Vance also argues that the ALJ erred by failing to give any weight to the opinion of Dr. Dar. (Plaintiff's Brief at 12-15.) Finally, Vance argues that the ALJ erred by finding that he had the residual functional capacity to perform the full range of medium work and return to his past relevant work as a coal mine electrician. (Plaintiff's Brief at 15-16.)

Vance argues that the ALJ erred by failing to give any weight to the opinion of Dr. Dar. (Plaintiff's Brief at 12-15.) Based on my review of the record, I find that substantial evidence exists to support the ALJ's rejection of Dr. Dar's opinion. The ALJ noted that Dr. Dar adopted Vance's subjective complaints without attempting independent or objective verification of such. (R. at 24.) The ALJ noted that Dr. Dar's report indicated that Vance was prompt for his appointment and cooperative throughout the interview. (R. at 24, 206.) Vance was oriented to place, person, time and situation. (R. at 24, 206.) Recent and remote memory were intact, and there were no signs of organic brain syndrome. (R. at 24, 206.) Furthermore, none of Vance's physicians diagnosed him with any mental impairments. Based on this, I find that substantial evidence exists to support the ALJ's rejection of Dr. Dar's assessment.

Vance also argues that the ALJ erred by ignoring the records and opinions of his treating physician, Dr. Sutherland. (Plaintiff's Brief at 9-12.) Based on my review of the ALJ's decision, I agree. The record reveals that Dr. Sutherland treated Vance from August 1, 2001, to November 27, 2002. In November 2002, Dr. Sutherland

-11-

placed numerous limitations on Vance's work-related abilities, including limitations on his ability to lift, stand, walk and sit. (R. at 181-83.) Furthermore, Sayers, a chiropractor, placed restrictions on Vance's ability to bend, lift, squat, sit and stand for prolonged periods. (R. at 193-94.) While an ALJ may, under the regulations, assign no or little weight to a medical opinion based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings, he may not reject medical evidence for no reason or for the wrong reason. *See King,* 615 F.2d at 1020. The record shows that the ALJ mentioned Dr. Sutherland's assessment at Vance's hearing. (R. at 290-91.) The ALJ chose not to include Dr. Sutherland's assessment in his hypothetical question to the vocational expert stating that if such assessment was accepted, it "would prevent work." (R. at 290-91.) However, the ALJ failed to even mention Dr. Sutherland's records and assessment in his decision. That being the case, the ALJ has provided no reason for his rejection of the opinion of Dr. Sutherland. Based on this, I cannot find that substantial evidence exists to support the ALJ's rejection of Dr. Sutherland's opinion or his finding that Vance had the residual functional capacity to perform the full range of medium work.

## *IV. Conclusion*

For the foregoing reasons, Vance's and the Commissioner's motions for summary judgment will be denied, the Commissioner's decision denying benefits will be vacated, and the case will be remanded to the ALJ.

An appropriate order will be entered.

-12-

DATED: This 28th day of October, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE